UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANONA ROBINSON,

       Plaintiff,

v.                                              Case No. 5:05-cv-165
                                              Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                       /

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).[1]

        Plaintiff was born on August 20, 1958 and completed the 10th grade (AR 73, 97).[2] Plaintiff filed a previous application for DIB and SSI, which resulted in an unfavorable decision by an Administrative Law Judge (ALJ) on June 7, 2002 (AR 48-57). The present case involves plaintiff's August 16, 2002 application for DIB and SSI, in which plaintiff states that she became disabled on June 8, 2002 (the day after the ALJ denied her first application) (AR 73). The ALJ found that the doctrine of res judicata applies to the issue of plaintiff's disability prior to June 7, 2002 (AR 31). Accordingly, the present appeal addresses the issue of disability beginning June 8, 2002 (AR 31).

---

[1] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2] Citations to the administrative record will be referenced as (AR "page #").

Plaintiff had previous employment as a housekeeper, laundry attendant and sales clerk in a clothing store (AR 92). Plaintiff identified her disabling conditions as asthma, lower back pain, leg pain, depression, panic attacks, arthritis in the lower spine, diabetes and high blood pressure (AR 91). After administrative denial of plaintiff's claim, an ALJ reviewed plaintiff's claim *de novo* and entered a decision denying these claims on November 22, 2004 (AR 31-41). This decision, which was later approved and modified by the Appeals Council,[3] has become the final decision of the Commissioner and is now before the Court for review (AR 8-10).

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the

---

[3] *See* discussion, in § II, *infra*.

record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

3

number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since June 8, 2002 (AR 31, 40). Second, the ALJ found that she suffered from severe impairments of: degenerative disc disease, lumbar spine; asthma; depression; anxiety; hypertension; diabetes; and obesity (AR 40). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 40). The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> to perform sedentary, unskilled work with limitations in lifting/carrying no more than a maximum of 10 pounds. She also requires the option to sit/stand every 30 minutes as needed and she can occasionally walk, climb stairs/ramps, crouch, squat, crawl, and kneel and she should avoid exposure to fumes, odors, gases, and poor ventilation.

(AR 40). The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 40).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of sedentary work (AR 40). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in the Lower Peninsula of Michigan: security guard (1,900 jobs); and, clerical, addressor or order clerk (5,300 jobs) (AR 40). The ALJ also found

plaintiff's allegations regarding her limitations were not totally credible (AR 40).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 40).

Plaintiff sought an Appeals Council ("Council") review of the ALJ's decision (AR 8-10).  The Council granted plaintiff's request for review and made four findings.  First, it adopted the ALJ's findings that plaintiff has not performed substantial gainful activity since the alleged onset date of April 29, 2002,[4] that she has severe impairments which do not meet or equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4, that she cannot perform her past relevant work, that she has a limited education, and that she can perform a limited range of sedentary work (AR 9).

Second, the Council modified the ALJ's finding No. 6 to include the mental limitations that were in the body of the decision but inadvertently left out of the ALJ's conclusion regarding plaintiff's residual functional capacity (AR 9).  The Council stated that "[t]he correct residual functional capacity is:

> restricted to unskilled work, lifting/carrying no more than 10 pounds, option to sit/stand every 30 minutes, occasionally walk, climb stairs/ramps, crouch, squat, crawl, and kneel, avoid exposure to fumes, odors, gases and poor ventilation, and limited contact with the public and co-workers.

(AR 9).

Third, the Appeals Council modified the ALJ's finding regarding the vocational evidence as follows:

> the vocational expert stated that even with her limitations, the claimant could still

---

[4] It is unclear how the Council determined this date. Plaintiff's application lists the alleged onset date as June 8, 2002 (AR 73). The ALJ made no specific finding that plaintiff's alleged onset date was April 29, 2002.

5

>perform 2,500 clerical, addresser and order clerk jobs in the [Lower] Peninsula of Michigan and 1,900 security guard jobs. Rule 201.19 can still be used as a framework to direct a finding of "not disabled."

(AR 10).

Fourth, the Council found that plaintiff "is not disabled as defined in the Social Security Act at any time through the date of the Administrative Law Judge's November 22, 2004 decision" (AR 10).

## III.  ANALYSIS

Plaintiff raises three issues on appeal.

### A.  Did the ALJ fail to comply with 20 C.F.R. § 404.1527, SSR 96-p in not according adequate weight to the opinion of plaintiff's treating physician?

A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give

it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Here, plaintiff contends that the ALJ ignored the opinions of her treating physician, Allison S. Thomas, M.D. The court disagrees. The ALJ discussed Dr. Thomas' opinions as follows:

> Dr. Thomas reported in February 2003, that the claimant was unable to work due to chronic low back pain and decreased mobility. While on June 22, 2004, she stated the claimant should only avoid lifting and bending. However, on June 25, 2004, Dr. Thomas concluded the claimant was unable to work at full time employment. Dr. Thomas' statements appear to contain inconsistencies, and therefore are accordingly rendered less persuasive.

(AR 37). The ALJ's conclusions are supported by the record (AR 240, 279-84).

As an initial matter, although Dr. Thomas was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

In addition, the ALJ properly found that Dr. Thomas' opinions were "rendered less

persuasive" due to inconsistencies. An ALJ may discount a treating physician's opinions if the physician has offered inconsistent opinions. *Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001). Dr. Thomas issued three opinions. First, the doctor felt that plaintiff was unable to work due to chronic back pain and decreased mobility in February 2003 (AR 240). At that time, Dr. Thomas noted that plaintiff "is to have surgery soon. . . to hopefully reduce or alleviate pain and correct condition," and that plaintiff will be re-evaluated after a full recovery from surgery to determine if she is capable of working (AR 240). The record does not reflect that plaintiff underwent surgery. Sixteen months later, on June 22, 2004, the doctor wrote a "to whom it may concern" note, which stated that plaintiff "has severe lumbar spinal stenosis and must avoid lifting and bending" (AR 279). Then, on June 25, 2004, the doctor prepared a "medical assessment of ability to do work-related activities (physical)" for the "Center for Disability Rights," in which she concluded that since April 2, 2002, plaintiff could only work for two hours per day, never lift any weight, and never carry any weight (AR 280-84). The doctor based her restrictions on objective medical findings of lumbar muscle spasm, decreased range of back motion., and a CT scan of her spine (AR 284).

The record reflects that plaintiff suffered from on-going back problems. However, Dr. Thomas' June 22, 2004 letter does not characterize these problems as disabling; rather, the doctor simply restricts plaintiff from lifting and bending. These restrictions appear consistent with plaintiff's records, which contain reports that she is "having difficulty sitting long periods" (AR 256) and having difficulty with prolonged standing, bending and squatting (AR 257). On the other hand, the June 25, 2004 "medical assessment" characterizes plaintiff as an invalid who is incapable of working more than two hours per day. The record does not contain any treatment notes from Dr. Thomas to demonstrate any reason for this sudden increase in restrictions. Accordingly, the court concludes that the ALJ gave sufficient reasons to discount Dr. Thomas' opinions.

### B.      Did the ALJ fail to properly consider the effects of obesity in evaluating disability in this claim?

Next, plaintiff contends that the ALJ did not perform an individualized assessment of the impact of her obesity. Obesity was deleted from the Listing of Impairments in 20 C.F.R., subpart P, Appendix 1. *See* SSR 02-01p, 2000 WL 628049 at *1. As the Social Security Agency stated in SSR 02-01p:

> However, even though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

*Id.*

In *Rush v. Barnhart*, 432 F. Supp.2d 969, 995 (D.N.D. 2006), the court discussed the relevance of SSR 02-01p:

> SSR 02-01p acknowledges that obesity is a disease, the causes of which are not well understood. It emphasizes that obesity is not always a mere function of overeating and failing to get enough exercise and that there may be intervening genetic and metabolic factors that are also significant. In relevant part it states the following:
>
>> Obesity is a complex, chronic disease characterized by excessive accumulation of body fat. Obesity is generally the result of a combination of factors (e.g., genetic, environmental, and behavioral). In one sense, the cause of obesity is simply that the energy (food) taken in exceeds the energy expended by the individual's body. However, the influences on intake, the influences on expenditure, the metabolic processes in between, and the overall genetic controls are

9

>      complex and not well understood.
>
>                         . . . . .
>      Treatment for obesity is often unsuccessful. Even if treatment results
>      in weight loss at first, weight lost is often regained, despite the efforts
>      of the individual to maintain the loss.
>
>      SSR 02-01p states that obesity can lead to, or complicate, many other
> diseases and conditions, including, relevant to this case, chronic diseases involving
> the musculoskeletal body systems. It also states that the "effects of obesity may be
> subtle, such as the loss of mental clarity and slowed reactions that may result from
> obesity-related sleep apnea."
>
>      SSR 02-01p sets forth three levels of obesity: Level I includes a body mass
> index (BMI) of 30.0-34.9; Level II a BMI of 35.0-39.9; and Level III (also known
> as "extreme" obesity), includes BMI's greater than 40.

*Rush*, 432 F.Supp.2d at 995.

Here, the ALJ observed that plaintiff weighed 274 pounds in December 2002 and that she suffered from a severe impairment of obesity (AR 37, 40). However, the ALJ did not mention SSR 02-01p in his decision or give any meaningful discussion of the effect of plaintiff's obesity as suggested in the guidelines. By finding that plaintiff suffered from a severe impairment of obesity, the ALJ acknowledged that her obesity "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Although the ALJ mentioned that obesity is a risk factor that could contribute to mental impairments and cause limitation of function, and discussed the concept of obesity in general terms, he did not identify plaintiff's level of obesity or discuss the extent to which obesity affected her ability to function (AR 37).

The court agrees with plaintiff that the ALJ should have addressed the manner in which the severe impairment of obesity affected her ability to work. Accordingly, the undersigned recommends that this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to re-evaluate plaintiff's obesity as outlined in SSR 02-01p..

> **C. Was the ALJ's finding that plaintiff can perform the sitting/standing and walking and other endurance requirements of sedentary work supported by the opinions of any examining physicians and did any other substantial evidence or record support his finding that she can perform sustained work activities?**

Finally, plaintiff contends that the ALJ's residual functional capacity assessment did not accurately reflect her limitations. Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

Plaintiff's argument is based upon Dr. Thomas' evaluation, specifically the doctor's opinion that plaintiff can only sit for two hours per day. Plaintiff's Brief at 23. As previously discussed, the ALJ could properly discount Dr. Thomas' opinion. While the ALJ found that plaintiff's RFC was less restrictive than found by Dr. Thomas, but more restrictive than as determined by the non-examining DDS physician (i.e., in regard to the ability to perform sedentary work versus light work), the ALJ did not explain how he reached this more restrictive RFC determination (AR 35-38). On the contrary, the ALJ randomly pointed out that plaintiff's claimed

limitations were not credible, that she engaged in compensation-seeking behavior (by not working while waiting for a ruling regarding her disability claim), and that she had not taken her prescribed medications (AR 36-37). However, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). In the present case, the court cannot trace the ALJ's reasoning behind the RFC determination. Furthermore, as previously discussed, the ALJ did not perform a meaningful discussion of the limitations posed by plaintiff's obesity. Accordingly, the ALJ should re-evaluate plaintiff's RFC determination on remand.

**IV.     Recommendation**

I  respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to re-evaluate the functional limitations posed by plaintiff's obesity, and, if necessary, to reconsider plaintiff's residual functional capacity.

Dated:  November 14, 2006         /s/ Hugh W. Brenneman, Jr.
                                  Hugh W. Brenneman, Jr.
                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).